**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DANA L. MALONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05 C 4309 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS; CENTRAL MANAGEMENT ) | |
| SERVICES; STATE EMPLOYEES' ) | |
| RETIREMENT SYSTEM ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Dana Malone has sued the Illinois Department of Corrections (IDOC), the Illinois

Department of Central Management Services (CMS), and the State Employees'

Retirement System (SERS), asserting a claim for retaliation of the Americans with

Disabilities Act, 42 U.S.C. § 12203(a), and the Rehabilitation Act of 1973, 29 U.S.C. §

794(d). The defendants have moved for summary judgment on all of Malone's claims.

For the following reasons, the Court grants defendants' motion in part, and denies it in

part.

**Facts**

Because the defendants have moved for summary judgment, the Court views the

facts in the light most favorable to Malone and draws reasonable inferences in her

favor. *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512

1

(7th Cir. 2008).

Malone was employed by IDOC in a position entitled Youth Supervisor II. IDOC is a state agency that oversees and manages correctional facilities in Illinois. In 1993, Malone suffered an injury at work and was unable to perform her duties as a Youth Supervisor II. After she was placed on disability and awarded worker's compensation benefits, Malone applied for the Alternative Employment Program (AEP), administered by CMS, the state agency responsible for employee placement. The program places state employees with disabilities in jobs they can perform with their medical restrictions. Malone was first admitted into the AEP in 1994 and was enrolled again in 2001.

Once an employee is enrolled in AEP, CMS issues her an AEP grade. The AEP grade is the mechanism by which AEP refers a participant to an available position. AEP grades typically expire after three years. While in AEP, an employee remains on leave with her employer-agency. If the employee's AEP grades expire, the employee returns to her former position with her agency if medically able to do so, retires if eligible, resigns, or is discharged.

In November 2002, Malone filed a lawsuit against several IDOC employees, alleging discrimination and failure to accommodate her disability. *Malone v. Shallcross*, No. 02 C 8126, 2004 WL 2534382 (N.D. Ill. Nov. 8, 2004) (*Malone I*). Another judge of this court ultimately granted defendants' motion for summary judgment in that case. *Id.*

After losing her lawsuit, Malone tried to obtain placement in IDOC. She contends that IDOC and CMS employees refused to speak with her or answer her questions about her employment status. When Malone's AEP grades automatically expired in 2004, she says, no one informed her of this development or of other

employment options she could have pursued, including applying for positions directly with IDOC.

In March 2005, Malone filed an EEOC charge claiming retaliation, naming IDOC as the respondent. In her charge, Malone stated that "after becoming disabled I was supposed to have been placed in Respondent's Alternative Employment program" but was "never . . . notified of any positions that have been available and for which I can perform the duties. Respondent has not clarified my employment status, and I have been left on leave for the past eleven years. This has continued because of my prior charges of discrimination." Pl. Ex. 2. After receiving a right-to-sue notice from the EEOC, Malone filed this lawsuit in July 2005.

IDOC and CMS contend that prior to January 1, 2005, there was no policy or procedure in place through which CMS informed agencies or AEP participants of the expiration of employees' AEP grades. Beginning in June 2005, CMS informed participants whose grades had previously expired that they were no longer eligible to participate in AEP. Malone was not informed that her grades had expired until October 2005, after repeated phone calls to various CMS and IDOC employees.

In January 2007, a SERS employee directed the State's Attorney's Office to collect a $17,807.18 debt from Malone. That debt had previously been discharged in bankruptcy. On February 13, 2007, Malone received a letter demanding that she contact the State's Attorney's Office to arrange payment. SERS took no further action with respect to the matter. SERS admits that it had no authority to attempt to collect the discharged debt.

3

**Discussion**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**A.     Exhaustion**

Defendants contend that Malone cannot bring this suit against CMS and SERS because she failed to exhaust her administrative remedies with respect to those two entities due to the fact that she did not name them in her EEOC charge.

To maintain a claim under the ADA or the Rehabilitation Act, an employee must first file a charge with the EEOC. *Sitar v. Indiana Dep't of Trans.*, 344 F.3d 720, 726 (7th Cir. 2003). The allegations in the suit must be like or reasonably related to the charge. *Haugerud v. Amery School Dist.*, 259 F.3d 678, 689 (7th Cir. 2001). Generally, a party must be named as a respondent in the EEOC charge in order to be subject to suit. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). A party not named in the charge may be sued, however, if it had notice of the charge and an opportunity to participate in conciliation. *Id.*; *see also, Eggleston v. Chicago Journeymen Plumbers'*

*Local Union No. 130, U.A.*, 657 F.2d 890, 906 (7th Cir. 1981). In determining whether

plaintiff's failure to name a party in the EEOC charge may be excused, a court

considers four factors: (1) whether the complainant could ascertain the role of the

unnamed party through reasonable effort at the time she filed the EEOC charge; (2)

whether the interests of a party named in the charge are so similar to those of the

unnamed party that to obtain voluntary conciliation and compliance, it would be

unnecessary to include the unnamed party in the EEOC proceedings; (3) whether that

party's absence from the EEOC proceedings resulted in actual prejudice to its interests;

and (4) whether the unnamed party has in some way represented to the complainant

that its relationship with her is to be via the party named in the charge. *Id.* at 908.

Although Malone's EEOC charge named only IDOC as the respondent, her

allegations revolve around her participation in the AEP, which CMS administers. The

Court cannot say, based on the record, that CMS had actual notice of Malone's EEOC

charge. Most of the *Eggleston* factors, however, support a finding that Malone's failure

to name CMS in the EEOC charge should be excused. First, the Court cannot

conclude on the current record that Malone reasonably could be expected to

understand that CMS, which is part of state government like IDOC, was a separate and

distinct organization. Second, the interests of IDOC and CMS are similar, in that both

are state agencies and cooperate with each other in the administration of the AEP

program for IDOC employees. Third, CMS does not argue that it suffered actual

prejudice due to Malone's failure to name it in the EEOC proceedings, and it does not

appear from the record that CMS could make a viable argument in this regard. As for

the fourth factor, there is no evidence that CMS represented to Malone that its

5

relationship to her was through IDOC.  That factor is the only one that weighs in CMS's

favor.  As a result, the *Eggleston* factors favor Malone, and her failure to name CMS

should be excused.  Furthermore, Malone's allegations brought CMS within the ambit of

her EEOC charge, even though CMS was not named in the charge, because her

allegations were aimed at a function that only CMS performed, namely management of

IDOC employees' participation in AEP.  As a result, the EEOC charge provided

sufficient information to alert CMS, via IDOC, regarding the basis for her charge and

thereby provided CMS the opportunity to participate in conciliation, if it so desired.

Defendants also contend that Malone's EEOC charge failed to provide notice of

her allegations regarding her 2008 promotional grade applications.  Malone does not

address the 2008 promotional grade applications in her response to defendants

argument.  As a result, she has forfeited any argument on that particular issue.

The same is not true of SERS.  Nothing in Malone's EEOC charge could have

put SERS on notice of her claim against that agency.  In fact, the basis of Malone's

claim against SERS—its attempted collection of her discharged debt—did not arise until

2007, two years after Malone filed her EEOC charge.[1]  As a result, Malone has failed to

exhaust her administrative remedies and cannot maintain her claim against SERS.

---

[1]The Seventh Circuit recognizes another exception to the exhaustion
requirement.  To avoid duplicative EEOC charges, a plaintiff need not file a second
EEOC charge to allege retaliation if the filing of the initial EEOC charge was the catalyst
for the retaliation.  *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000).  This
exception is not applicable here; Malone contends that SERS retaliated against her in
response to her filing of *Malone I*, not her EEOC charge.

**B.	Judicial estoppel and claim preclusion**

Defendants contend that Malone's statements before the Social Security

Administration (SSA) that she was disabled preclude her from seeking any relief in this

case premised on her ability to work.  For judicial estoppel to apply, "the latter position

must be clearly inconsistent with the earlier position; the facts at issue must be the

same in both cases; and the party to be estopped must have prevailed upon the court

to adopt the first position."  *Urbania v. Central States, Se. & Sw. Areas Pension Fund*,

421 F.3d 580, 589 (7th Cir. 2005).  In this case, the record makes it clear that Malone's

statements to the SSA, made in 2003, referred to her disability at that time.  And the

benefits she received were for temporary disability.  Seen in this context, Malone's

statements to the SSA are not inconsistent with her allegations in this case that she

later became able to perform at least some of the duties of a Youth Supervisor II.

Thus, Malone is not estopped from contending that she can now perform duties that

she testified she was previously unable to perform.

Defendants also contend that the doctrine of claim preclusion bars Malone from

asserting claims based on conduct that she could have asserted in *Malone I*.  The

Court previously determined that to avoid the application of claim preclusion, Malone's

claims must be limited to conduct that occurred after November 1, 2004.  *See* Order of

Dec. 12, 2005.  Malone's claims, as they stand today, meet that standard.  As a result,

the doctrine of claim preclusion does not bar her claims.

**C.	Prima facie case of retaliation**

Malone has elected to proceed on her retaliation claim via the indirect method of

proof. To establish a *prima facie* case under the indirect method, Malone must demonstrate that: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) she was treated less favorably that similarly-situated employees who did not engage in protected activity. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). It is undisputed that Malone engaged in protected activity by filing *Malone I*.

Defendants contend that Malone cannot show that either IDOC or CMS subjected her to a materially adverse employment action. A materially adverse employment action is one that might dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). The question of whether an action is materially adverse is one of fact and "can be resolved on summary judgment only if the question is not fairly contestable." *Basith v. Cook County*, 241 F.3d 919, 933 (7th Cir. 2001).

Malone testified at her deposition that after the dismissal of *Malone I*, no one at CMS or IDOC would answer her questions about her status in the AEP. Then, after she became aware that her AEP grades had expired, no one at CMS or at IDOC informed her that she could apply for positions directly to IDOC. Rather, she testified that she was told that she could not enter IDOC property while her lawsuit was pending. Although defendants paint Malone's account of her treatment by CMS and IDOC employees as a minor annoyance or a petty slight, a reasonable jury could conclude that a reasonable employee would have been deterred from making a charge of discrimination if subjected to that sort of treatment.

8

Defendants contend that Malone has failed to identify similarly situated individuals who did not engage in protected conduct who were treated more favorably. To demonstrate that another employee was similarly situated, Malone "need not show complete identity in comparing [herself] to the better treated employee." *Stone*, 281 F.3d at 644. Rather, she must demonstrate that "the employee is comparable to the plaintiff in all *material* respects." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) (emphasis in original). The characteristics that are material depend on the context of the case. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

Malone claims identified two individuals were similarly situated to her but were treated more favorably by IDOC and CMS: Dana Pickel and Monica Barry. Both women were employed as correctional officers by IDOC and participated in the AEP. Both were assigned the same bargaining code (a number that indicates the employee's position requirements and pay grade) as Malone. Pickel, who did not engage in protected activity, was notified in 2005 by CMS that her AEP grades were terminated, and she was reinstated to her former position. Barry was also ultimately reinstated to her former position. She engaged in protected activity by filing a charge with the EEOC, but she did not file suit in court. Rather, pursuant to a deal negotiated with the help of her union, she was permitted to remain on AEP for an additional year.

Defendants contend that Pickel is not similarly situated because her AEP grades expired after a new AEP information-sharing policy was in place. The similarly-situated inquiry does not require, however, that the compared employee be identical to the plaintiff. Given the other similarities between Malone and Pickel, a reasonable jury

9

could conclude that the two are similarly situated and that CMS treated Pickel more favorably.

Defendants contend that Barry's negotiated deal renders her dissimilar to Malone for the purposes of the *prima facie* case. This is precisely the dissimilarity that qualifies Barry as a potential comparator to Malone. Barry—who did not file a lawsuit—was offered an alternative that Malone contends was not presented to her. That, combined with the previously stated similarities, would allow a reasonable jury to conclude that Barry was similarly situated yet treated more favorably.

## D.  Pretext

Once a plaintiff has established a *prima facie* case, the defendant is entitled to summary judgment if it presents unrebutted evidence of a non-invidious reason for the adverse action. *Stone*, 281 F.3d at 644. "Otherwise, there must be a trial." *Id.*

IDOC contends that it did not inform Malone of her employment options because it was unaware that her AEP grades had expired. Because IDOC's AEP coordinator, Lesa Schaive, focused on employees for whom CMS had a file, and because CMS had no file on Malone due to the previous expiration of her AEP grades, IDOC contends that it was a mere oversight that Schaive did not learn of Malone's status. Although she could not recall specific dates, Malone testified at her deposition that she contacted IDOC employees to verify her employment status but was either ignored or passed off to other employees without answers to her questions. IDOC argues that this testimony is insufficient to support a reasonable inference of retaliatory motive. The evaluation of Malone's testimony is a credibility determination, which is inappropriate for resolution at

the summary judgment stage. If credited, Malone's testimony could support an

inference that IDOC's proffered explanation—a clerical oversight—is untrue and thus

pretextual. The fact that Malone contacted IDOC employees to inquire about her status

could call into question IDOC's contention that it was totally ignorant of her situation. In

addition, even after Malone and IDOC knew that her AEP grades had expired, Malone

contends, IDOC failed to inform her of other employment options. From this, a

reasonable jury could infer that IDOC's motive was retaliatory.

CMS contends that it did not inform Malone that her AEP grades had expired

because it simply was not keeping track of grade expirations at the time. CMS also

argues that Malone cannot show pretext because other employees whose AEP grades

expired before 2005 were not notified of the expiration of their grades when they

expired. Thus, CMS contends, Malone cannot show that the fact that she was denied

information was retaliatory. Malone has, however, produced evidence that CMS was

aware that her AEP grades had expired at least two months before she actually

received notice of the expiration. In addition, there is evidence that other employees

whose grades had previously expired began receiving notifications as early as June

2005. Yet, according to Malone, she did not learn that her grades had expired until

late-October, after several phone calls to IDOC. From this, a reasonable jury could

conclude that CMS's proffered reason for failing to notify Malone—that she essentially

fell through the cracks—was untrue and thus a pretext for retaliation.

## Conclusion

For these reasons, the Court grants defendants' motion for summary judgment

with respect to defendant SERS, but denies the motions with respect to defendants

CMS and IDOC, except with regard to the forfeited point identified at page six of this

decision.  The case is set for a status hearing on September 16, 2009 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 14, 2009